In re TERMINAL LAND CO.

No. 30703. Dec. 1, 1942.

*131 P. 2d 743.*

Pierce, McClelland, Kneeland & Bailey, of Oklahoma City, for Terminal Land Company.

F. M. Dudley, A. L. Herr, C. D. Stinchecum, and A. D. Howell, all of Oklahoma City, for Oklahoma Tax Commission.

GIBSON, J. This is an appeal by the Terminal Land Company from an order of the Oklahoma Tax Commission denying its claim for refund of certain income taxes paid for the year 1938.

The Income Tax Law then in force was article 6, ch. 66, S. L. 1935. The present claim was filed pursuant to sections 3 and 28 thereof, which authorized refund of taxes erroneously paid.

The alleged excessive payment for which the claim was filed came about by reason of the taxpayer's failure to deduct from its gross income certain losses resulting from alleged investments in property located in the State of Kansas.

According to the record, the taxpayer, Terminal Land Company, is a domestic corporation. It has never been authorized to do business in Kansas. In 1937 it entered into an agreement with the Olson Oil Company whereby the latter was to drill a test well for oil and gas at a specified location in Kansas to a depth sufficient to test the Viola lime, or not exceed 6,500 feet. The Terminal Company agreed to pay the Olson Company the sum of $8,649.04 as bottom hole money, and for a consideration of $1,350.96 was to receive from the Olson Company assignments of certain interests in leases in the State of Kansas, including a half interest in the lease under the test well. Pursuant to the agreement, the assignments and the

money, aggregating $10,000, were deposited in escrow in Oklahoma City, the Olson Company to receive the $10,000, and the Terminal Company the assignments upon completion of the drilling. The Terminal Company was to own one-half interest in the well in event it became a commercial producer, after which, if the well produced, an agreement would be made with respect to management and development of the acreage.

The well was drilled to 6,500 feet, and was dry. The escrow was then consummated. The Olson Company received the $10,000, and the Terminal Company the assignments.

Subsequently the Terminal Company entered into an agreement with another corporation, the Alma Oil Company, whereby the latter undertook to deepen the well under the same conditions as provided in the original agreement with the Olson Company. The Terminal was to pay half the cost of the drilling upon completion and was to have no part in the operations and management prior to completion. The well was dry. And pursuant to its agreement, the Terminal paid to the Alma Company the sum of $13,435.91 as its part of the cost. The development was abandoned, and the Terminal's total loss was $23,435.91.

The taxpayer says that it erroneously failed to deduct said loss from its gross income and is now entitled to credit therefor, and to a refund of that portion of the taxes paid as a result of such error, which, it is agreed, amounts to $1,273.69.

The deduction is claimed under the provisions of section 9 (d) of the statute, supra, which provides that the taxpayer may deduct losses sustained in trade or business, or in any transactions entered into for profit though not connected with trade or business.

It is contended that the losses aforesaid were sustained by the taxpayer through investments in property held outside the state, and were therefore deductible under the above statutory provisions. As supporting authority, the taxpayer relies mainly on Natural Gas Dev. Corp. v. Oklahoma Tax Comm., 188 Okla. 557, 111 P. 2d 483.

In that case the question to be determined was stated by the court as follows:

"The sole question for decision is whether a resident taxpayer, under chapter 66, art. 6, S. L. 1935, is permitted to deduct from gross income earned from property owned and business transacted within the state, losses sustained by or through investment in property held outside the state."

There the taxpayer purchased an oil and gas mining lease in the State of Kansas. The lease proved worthless and was released. It was held that the purchase price was a proper deduction as a loss under said section 9(d), and in reversing the cause and ordering appropriate refund, the court said:

"The Legislature, by section 9, subsection (d) of the act, must have intended to permit the deduction of losses sustained by or through investments of property held outside the state in the case of taxpayers who are defined as residents of the state."

The Tax Commission asserts there is a clear distinction between that case and the present one. In this connection our attention is called to the provision of section 9(d), supra, to the effect that the basis for determining the deductible loss allowed by said subdivision (d) shall be the same as that provided in section 12 of the act for determining the loss from the sale or other disposition of property. It is urged, however, that the deduction here claimed cannot be computed under section 12 for the reason that the taxpayer actually owned no interest in the leases, and therefore had no property to dispose of as did the taxpayer in Natural Gas Dev. Corp. v. Oklahoma Tax Comm., supra, but, instead, simply sustained a business loss as a result of drilling a dry hole in its effort to produce oil and gas. The taxpayer, contends the commission, was not dealing in property; that no investment in property was made; that it was

doing business both within and without Oklahoma, and that the loss was attributable wholly to business done in Kansas, and therefore cannot be deducted from the gross income attributable to this state. These circumstances, it is said, bring the case within section 9(a) and (i), and not under (d) of that section.

Said subdivisions (a) and (i) provide in substance that all the ordinary and necessary expense paid during the year in carrying on any trade or business may be deducted from gross income, and, as said in subdivision (i), where the income is derived from sources both within and without the state a deduction from the gross income derived from property owned or business done in Oklahoma is allowed as expense attributable to Oklahoma income, but, no such taxpayer "shall be permitted to include in expenses deductible from gross income arising in Oklahoma, any portion of any loss sustained from property owned or business done outside the state."

We cannot agree that the loss in Kansas was sustained from property owned or business done in that state, within the meaning of the above-quoted provision. A distinction is clearly drawn between the loss from property owned outside the state as provided in said subdivision (i) and the loss from the sale or other disposition of property. That subdivision does not contemplate the disposal of property, but property "owned" outside the state, while subdivision (d) and section 12 deal with property "disposed of." Subdivision (i) refers to the losses occasioned by the ownership of property; the losses incident to its management, preservation, etc., while subdivision (d) and section 12 refer to the loss incident to the sale or other disposition, the closed transaction.

To all legal intents and purposes the transaction here was precisely the same as that in the Natural Gas Development Corporation Case, supra. Though the purchase here depended on completion of the well, the present taxpayer became the owner of the leases as did the taxpayer in the case cited, and there was a disposition in each case and a total loss of the investment.

The commission says the taxpayer and the other companies were joint adventurers carrying on drilling operations and the loss was the result of those operations. But, regardless of what the ultimate relationship may have been had the well been a producer, it is sufficient to say that the taxpayer had no part in the drilling operations and no contract of joint management was ever entered into. The taxpayer's entire transaction was one looking toward the ownership of the leases. It did become the owner, but in so acquiring title it paid out a certain sum. The property was abandoned or disposed of at a total loss of the cost thereof, and the taxpayer's status with regard to that loss was precisely the same as that of the taxpayer in the case last cited, so far as the income tax statute is concerned.

The cause must be reversed and refund granted.

It is so ordered.

WELCH, C. J., and OSBORN, BAYLESS, HURST, DAVISON, and ARNOLD, JJ., concur. CORN, V. C. J., dissents. RILEY, J., absent.